NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLSTATE NEW JERSEY INSURANCE COMPANY., <br><br> Plaintiff, <br> v. <br><br> AVALON BAY COMMUNITIES, INC., <br><br> Defendant. | **OPINION** <br> Civ. No. 16-5441 (WHW-CLW) |

**Walls, Senior District Judge**

Defendant Avalon Bay Communities, Inc. ("Avalon Bay") moves to dismiss the Complaint of Plaintiff Allstate New Jersey Insurance Company ("Allstate New Jersey") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 4. Decided without oral argument under Federal Rule of Civil Procedure 78, Defendant's motion is denied.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Allstate New Jersey, an Illinois corporation with its principal place of business in Illinois, brings this tort action against Avalon Bay, a Maryland corporation with its principal place of business in Virginia, for negligence related to a January 21, 2015 fire at the residential apartment complex known as Avalon Edgewater. ECF No. 1 ¶¶ 1–9. The Complaint alleges that Avalon's "unsupervised, untrained, and unlicensed maintenance workers" "accidently ignited building materials while using an acetylene torch to perform plumbing repairs behind a wall inside one of the [Avalon Edgewater] apartment units." *Id.* ¶¶ 10–11. Instead of calling 911 to report the fire, the maintenance workers allegedly allowed the fire to spread "through the building's interstitial wall space," causing the fire to spread laterally and destroy the entire

property. *Id.* ¶ 12. Allstate contends that the fire damaged or destroyed all of the personal property of its Insureds, who made claims against their policies totaling $709,310.07. *Id.* ¶ 13–15, Ex. A at 2. Allstate indemnified its Insureds for certain real and personal property damages as well as expenses incurred as a result of having to find alternative housing. *Id.* ¶ 15.

On September 6, 2016, Allstate filed the above-captioned subrogation action in the District of New Jersey. *Id.* The Complaint charges Avalon Bay with negligently causing the January 21, 2015 fire and seeks damages totaling over $700,000. *Id.* ¶¶ 16–21. Avalon Bay moved to dismiss the Complaint on September 22, 2016. ECF No. 4. Avalon Bay argues that each Insured waived his or her rights of subrogation against Avalon Bay in his or her Avalon Edgewater lease agreement. *Id.* at 1–2.[1] Because Allstate stands in the position of the Insureds for the purposes of this subrogation action, Allstate is bound to this subrogation waiver. *Id.* Allstate responds that the subrogation waiver is unenforceable because it contravenes public policy and is vague and ambiguous. ECF No. 14-1 at 4–16.

---

[1] The text of the lease paragraph containing the alleged subrogation waiver reads:

**32. Am I required to purchase renter's insurance?**

Yes. You acknowledge that we have not purchased insurance coverage for your personal belongings or any personal property located in your Apartment or anywhere at the Community or for any personal liabilities that may be suffered or incurred by you or your family, guests, invitees or any other occupants or visitors to your Apartment. You waive and release us from all claims against us that you may have, now or in the future, with respect to any loss of or damage to personal property kept in the Community. You are not required to maintain insurance for your personal property, but it is available and we recommend that you maintain such insurance in an amount equal to the value of your personal property. During the term of this lease, you agree to purchase and maintain, at your sole cost and expense, a comprehensive personal liability policy or its equivalent, issued by a licensed insurance company that you select which provides limits of liability of at least $100,000 per occurrence. All policies shall waive rights of subrogation against the Owner and Manager. You agree to provide a copy of these insurance policies or certificates evidencing these insurance policies in form and content reasonably acceptable to us at the time you obtain the policies and on each annual renewal date for such insurance policies. You agree to maintain these insurance policies during the entire term of your residency at the Community, but you may choose any insurance company authorized or admitted to do business on the state where the Community is located.

Giller Decl., ECF No. 4-3, Exs. 2–25 at ¶ 32.

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679. It is well settled that "document[s] integral or explicitly relied upon in the complaint" may be considered at the motion to dismiss stage "without converting the motion into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## DISCUSSION

Avalon Bay argues that each of Allstate New Jersey's insured's signed an Avalon Edgewater lease agreement containing a waiver of subrogation rights, which acts as an absolute bar to Plaintiff's claims. ECF No. 4-2 at 3–6. Allstate argues that the subrogation waiver is unenforceable since it contravenes public policy and is vague and ambiguous. ECF No. 14-1 at

3

4–16. Because Court agrees that the waiver of subrogation rights is unenforceable, Plaintiff's motion to dismiss is denied.

Subrogation is the "principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law Dictionary* 1440 (7th ed.1999). An insurer who indemnifies its insured for a loss caused by a third party is subrogated to whatever rights the insured may have had against the third party. *Standard Accident Ins. Co. v. Pellecchia,* 15 N.J. 162, 171 (1954).

The right to subrogation is not absolute, and parties may agree to waive or limit it. *LIG Ins. Co. v. Bonanno Real Estate Grp. II, L.P.*, No. A-4489-11T4, 2013 WL 3329746, at *3 (N.J. Super. Ct. App. Div. July 3, 2013). "A third party may assert any defenses against the insurer that it would have had against the insured, including that any claim for recovery was waived by contract. *Id.* (citing *Culver v. Ins. Co. of N. Am.,* 115 N.J. 451, 456 (1989)) ("[S]ubrogation is not applicable where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application.") (internal quotation marks omitted)); *see also Skulskie v. Ceponis,* 404 N.J. Super 510, 513 (App.Div. 2009) (right of subrogation may be "waived or limited by agreement"). In *Continental Insurance Company v. Boraie*, 288 N.J. Super. 347 (Law. Div. 1995), the court recognized that an insured can waive the subrogation rights of his or her insurance company without its knowledge. *Id.* at 351–52. The *Boraie* Court explained that this outcome was consistent with "New Jersey decision law . . . that business people have the right to determine that the risks of a transaction shall be borne by insurance." *Id.* at 352.

Plaintiff argues that a waiver of subrogation rights is simply an exculpatory clause, and should be invalidated for violating public policy. ECF No. 14-1 at 10 (citing *Kuzmiak v. Bookchester, Inc.*, 33 N.J. 575, 588 (App. Div. 1955)). Defendant answers that it is only trying to enforce a straightforward waiver of subrogation rights, which "Allstate could have guarded against by increasing its premiums or by voiding a policy if the subrogation rights were waived." ECF No. 15 at 2–3. Even if the waiver of subrogation clause is not exculpatory, the Court finds that it is void in this instance.

In New Jersey, courts enforce subrogation waivers based on the rationale that courts should not get in the way if parties waive their rights to subrogation because they "intended to shift the risks of loss to insurance policies which they undertook to procure." *Boraie*, 288 N.J. Super. At 347; *see also Mayfair Fabrics v. Henley*, 48 N.J. 483, 488 (1967) ("[T]he lease reflected a studied attempt to spell out the distribution of the risks and that its practical effect was to specify who was to obtain and to bear the cost of insurance to indemnify against loss or damage occurring to property within the demised premises.") (internal quotation marks and citations omitted). The rationale behind the validity of these waivers depends on the contracting parties having a meaningful choice in how to distribute liability. *See Id.* There is no evidence that such a choice was afforded to the Insureds in this matter.

The Court is not persuaded by Defendant's comparisons to commercial transactions or Defendant's argument that the Court should simply follow a New Jersey Superior Court's granting of an unopposed motion to dismiss based on the same subrogation waiver. ECF No. 4-2 at 1; Giller Decl., ECF No. 4-3, Ex. 1. All twenty-four leases of residential tenants at issue consist of a standardized printed form, presented without opportunity for negotiation on a vast majority of the provisions, including the subrogation waiver. *See* Giller Decl., ECF No. 4-3, Exs.

5

2–25. The Insureds therefore lacked a meaningful choice in the acceptance of the subrogation waiver. *See Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 301 (2010); *see also Rudbart v. North Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 353 (1992). As such, these agreements constitute contracts of adhesion. *Stelluti*, 203, N.J. at 301 ("A contract of adhesion is defined as one 'presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate.'" (quoting *Rudbart*, 127 N.J. at 353)). If an agreement is determined to be a "contract of adhesion," non-enforcement of its terms may be justified if they are unconscionable. *See Stelluti*, 203, N.J. at 302.

The New Jersey Supreme Court outlined four factors that courts should consider when determining whether an adhesion contract is unconscionable: "[C]ourt[s] have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract[;] (2) the parties' relative bargaining positions[;] (3) the degree of economic compulsion motivating the 'adhering' party[;] and (4) the public interests affected by the contract." *Rudbart*, 127 N.J. at 356, 605 A.2d 681. As part of that assessment, a court considers not only the "substantive" contents of the agreement, but also the "procedural" context that led to its execution. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 40 (2006).

Based on these factors, the subrogation waiver located in paragraph thirty-two of the lease agreement warrants non-enforcement. First, New Jersey recognizes that the "bargaining positions of landlord and tenant in an apartment building are decidedly unequal." *Kuzmiak v. Brookchester, Inc.*, 33 N.J. Super. 575, 587 (App. Div. 1955). Additionally, Avalon Bay's subrogation provision is completely one-sided. Unlike many of the valid subrogation waivers in commercial leases, Avalon Bay's residential lease lacks a mutual waiver of subrogation rights, making the clause solely for Avalon Bay's economic benefit. *See* Giller Decl., ECF No. 4-3, Exs.

2–25. Nothing in paragraph thirty-two prevents Avalon Bay's insurers from filing a claim against a tenant's insurance company to recompense for property damage caused to the premises as a result of a tenant's negligence. *Cf. State Farm Fire & Cas. Co. v. Petroleum Heat & Power Co.*, No. CV 13-6732, 2016 WL 5816182, at *9 (E.D. Pa. Oct. 5, 2016) (finding a contract of adhesion unconscionable as to a subrogation waiver, in part because "even though the [subrogation] waiver is defined as 'mutual,' the waiver is substantively unconscionable because the waiver is in actuality not mutual at all").

The public interests affected by the contract also militate toward finding paragraph thirty-two unenforceable. First, the policy considerations that make subrogation waivers important in commercial contracts are not present here, where Avalon Bay is using the waiver of subrogation to insulate itself from liability by transferring it to the Insureds' insurance companies. Besides, as Plaintiff notes, subrogation waivers may lead to decreased standards of care by landlords and increased insurance costs for tenants. ECF No. 14-1. Additionally, as Defendant acknowledges, insurers could simply include their own contract provisions voiding any policies whose owners waived their rights of subrogation, ECF No. 15 at 3, resulting in tenants unknowingly voiding their insurance policies when signing hidden subrogation waivers like the one at issue in this case.[2] As also noted by Defendant, insurers like Allstate New Jersey could simply stop issuing comprehensive property and liability renter's insurance policies to tenants who waived their subrogation rights, *id.*, likely resulting in increased insurance costs for Defendants' tenants.

Finally, paragraph thirty-two is void because the procedural context that led to its execution was unsuitable. *See Delta Funding Corp.*, 189 N.J. at 40. Not only did the Insureds

---

[2] Unintentional voiding of one's insurance policy would be especially damaging in a case like this where a tenant's ability to recover for his or her landlord's negligence is called into question by an exculpatory clause. *See* Giller Decl., ECF No. 4-3, Exs. 2–25 ¶ 32.

lack a meaningful choice in acceptance of the subrogation waiver provision, but the provision is practically submerged in an unconventional question-and-answer formatted lease provision about a variety of insurance options and requirements. *See* Giller Decl., ECF No. 4-3, Exs. 2–25 at ¶ 32. The obscured subrogation waiver is troubling given the likelihood that any unsophisticated tenants might not even know what subrogation means. Avalon Bay's casual inclusion of the subrogation waiver deep in a long paragraph about insurance options and obligations is markedly different from the clearly identified subrogation waivers in cases advanced by Avalon Bay, all of which involved apparently more sophisticated parties engaged in commercial transactions. *See, e.g., LIG Ins. Co.*, 2013 WL 3329746, at *1–2 (identifying the waiver of subrogation in a commercial lease with a bold and capitalized header reading "DAMAGES TO BUILDING/ WAIVER OF SUBROGATION"); *Kramer ex rel. Pub. Serv. Mut. v. Fokis, Inc.*, No. A-5833-05T5, 2007 WL 1461267, at *1 (N.J. Super. Ct. App. Div. May 21, 2007) (identifying the waiver of subrogation in its own lease paragraph titled "Waiver of Subrogation."); *Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*, No. CIV.A. 08-3550, 2010 WL 3724279, at *3 (D.N.J. Sept. 16, 2010) (noting that the commercial lease contained several waiver of subrogation provisions, at least one of which had been customized by the parties). The hidden nature of the subrogation waiver here further emphasizes that the Insureds were not engaged in a business decision to distribute insurance costs.

For the foregoing reasons, the waiver of subrogation signed by the Insureds is unenforceable. It follows that Defendant's motion to dismiss is denied.

NOT FOR PUBLICATION

## CONCLUSION

Defendant's motion to dismiss is denied. An appropriate order follows.

DATE: 17 Jany 2017

William H. Walls
Senior United States District Court Judge